1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GEORGE COSIO,                              )
                                           )
                  Petitioner,              )        No C 05- 1966 CRB (PR)
                                           )
      vs.                                  )        ORDER DENYING PETITION
                                           )        FOR A WRIT OF HABEAS
A. P. KANE, Warden,                        )        CORPUS
                                           )
                  Respondent.              )
_____            )

**INTRODUCTION**

        George Cosio, a state prisoner at the Correctional Training Facility in
Soledad, California, filed this pro se action seeking a writ of habeas corpus under
28 U.S.C. § 2254 challenging the California Board of Prison Terms' ("BPT")
parole denial on March 15, 2004.

        The court found that the petition, when liberally construed, appeared to
state a cognizable due process claim under § 2254 and, on October 3, 2005,
ordered respondent to show cause why a writ of habeas corpus should not be
granted.  Respondent filed an answer to the order to show cause and petitioner
subsequently filed a traverse.  This pro se habeas petition is now before the court
for consideration of the merits and, for the reasons discussed below, the petition
is denied.

**BACKGROUND**

Petitioner was convicted of second degree murder on April 19, 1982 in the Superior Court of the State of California in and for the County of Riverside and was sentenced to an indeterminate prison term of fifteen years to life.

On March 15, 2004, petitioner appeared with counsel before a BPT panel for his tenth parole consideration hearing.  The board found that petitioner was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety.  The presiding commissioner explained that, in deciding to deny parole, the panel considered petitioner's commitment offense, prior criminal and social history, his programming and behavior since commitment, including progress since petitioner's last hearing, and any new psychiatric reports.

Petitioner challenged the BPT's March 15, 2004 decision in the state superior, appellate and supreme courts.  After the Supreme Court of California denied his final state habeas petition on March 23, 2005, the instant federal petition for a writ of habeas corpus followed.  The parties do not dispute that state judicial remedies were exhausted for the claims asserted in this petition. This court has subject matter jurisdiction over this habeas action under 28 U.S.C. § 2254 and, because the challenged action occurred within this judicial district at the Correctional Training Facility in Soledad, in Monterey County, California, this action is in the proper venue.

**DISCUSSION**

A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even

1    when the petitioner is not challenging his underlying state court conviction."

2    White v. Lambert, 370 F.3d 1002, 1009-10 (9th Cir. 2004).  Under AEDPA, this

3    court may entertain a petition for habeas relief on behalf of a California state

4    inmate "only on the ground that he is in custody in violation of the Constitution

5    or laws or treaties of the United States."  28 U.S.C. § 2254(a).

6          The writ may not be granted unless the state court's adjudication of any

7    claim on the merits: "(1) resulted in a decision that was contrary to, or involved

8    an unreasonable application of, clearly established Federal law, as determined by

9    the Supreme Court of the United States; or (2) resulted in a decision that was

10   based on an unreasonable determination of the facts in light of the evidence

11   presented in the State court proceeding."  Id.  at § 2254(d).  Under this deferential

12   standard, federal habeas relief will not be granted "simply because [this] court

13   concludes in its independent judgment that the relevant state-court decision

14   applied clearly established federal law erroneously or incorrectly.  Rather, that

15   application must also be unreasonable."  Williams v. Taylor, 529 U.S. 362, 411

16   (2000).  While circuit law may provide persuasive authority in determining

17   whether the state court made an unreasonable application of Supreme Court

18   precedent, the only definitive source of clearly established federal law under 28

19   U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme

20   Court as of the time of the state court decision.  Id. at 412; Clark v. Murphy, 331

21   F.3d 1062, 1069 (9th Cir. 2003).  When the state court decisions do not provide a

22   reasoned opinion, as in this case, the court "must conduct an independent review

23   of the record to determine whether the state court's decision was objectively

24   unreasonable."  Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1127 (9th

25   Cir. 2006).

26   B.    Legal Claims and Analysis

27

28                                         3

1      Petitioner seeks federal habeas corpus relief from the BPT's March 15,

2  2004 decision finding him not suitable for parole, and denying him a subsequent

3  hearing for two years, on the ground that the decision does not comport with due

4  process.  Petitioner claims that: (1) the BPT's continued reliance on his

5  commitment offense and other unchanging factors does not provide "some

6  evidence" necessary to support the board's decision, and (2) aggregate statistical

7  results demonstrate the board's systematic bias against granting parole to

8  prisoners convicted of murder.

9      As a preliminary matter, respondent contends that this court lacks

10  jurisdiction to review petitioner's habeas petition because California inmates

11  have no liberty interest in parole protected by federal due process.  Respondent

12  bases this argument on the California Supreme Court decision in In re

13  Dannenberg, which held that "the statutory language [of California's parole

14  scheme under section 3041] belies the notion of a mandatory duty to set a release

15  date for all indeterminate life inmates."  In re Dannenberg, 34 Cal. 4th 1061,

16  1087 (2005) (emphasis in original).

17      The Ninth Circuit recently rejected respondent's no-liberty-interest

18  argument as misconstruing the narrow ruling in Dannenberg and confirmed that

19  "California inmates continue to have a liberty interest in parole after In re

20  Dannenberg, 34 Cal. 4th 1061 (2005)."  Sass, 461 F.3d at 1125.  After Sass, it is

21  well-established that section 3041 "gives rise to a cognizable liberty interest in

22  release on parole" which cannot be denied without adequate procedural due

23  process protections.  Id. at 1128; McQuillion v. Duncan, 306 F.3d 895, 902 (9th

24  Cir. 2002).  It matters not that, as is the case here, a parole release date has never

25  been set for the inmate because "[t]he liberty interest is created, not upon the

26  grant of a parole date, but upon the incarceration of the inmate."  Biggs v.

27

28                                              4

1    Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003).[1]

2         1. Sufficiency of Evidence Claim

3         Petitioner's due process rights require that "some evidence" support the

4    parole board's decision finding him unsuitable for parole.  Sass, 461 F.3d at 1125

5    (holding that the "some evidence" standard for disciplinary hearings outlined in

6    Superintendent v. Hill, 472 U.S. 445, 454-55 (1985), applies to parole decisions

7    in § 2254 habeas petition); Biggs, 334 F.3d at 915 (same); McQuillion, 306 F.2d

8    at 904 (same); Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.

9    1987) (same).  This "some evidence" standard is minimally stringent and ensures

10   that "the record is not so devoid of evidence that the findings of [the BPT] were

11   without support or otherwise arbitrary." Superintendent v. Hill, 472 U.S. 445,

12   457 (1985).  Determining whether this requirement is satisfied "does not require

13   examination of the entire record, independent assessment of the credibility of

14   witnesses, or weighing of the evidence."  Id. at 455-56 (quoted in Sass, 461 F.3d

15   at 1128).

16        Due process also requires that the evidence underlying the parole board's

17   decision have some indicia of reliability.  Biggs, 334 F.3d at 915; McQuillion,

18   306 F.3d at 904; Jancsek, 833 F.3d at 1390.  Relevant in this inquiry "is whether

19   the prisoner was afforded an opportunity to appear before, and present evidence

20

21   1 Contrary to petitioner's contention, the failure of the BPT to set a parole release date
     does not in itself violate his liberty interest in parole, regardless of the length of time
22   served.  Relying on California's statutory base terms for second degree murder, Cal.
     Code Regs. tit. 15, § 2403(c), petitioner claims that his sentence exceeds the uniform
23   term for his offense and that the failure of the BPT to set his release date effectively
     heightens his culpability to the level of first degree murder.  Because the section 2403
24   base terms only apply to prisoners already "found suitable for parole," these guidelines
     do not apply to petitioner.  Petitioner "fails to explain how his sentence of fifteen years
25   to life is greater than that permitted by the statute then in effect, which called for this
     very sentence." Morales v. California Dep't of Corrections, 16 F.3d 1001, 1005-06
26   (9th Cir. 1994), rev'd on other grounds, 514 U.S. 499 (1995).

27

28                                        5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

to, the board." Morales v. California Dep't of Corrections, 16 F.3d 1001, 1005 (9th Cir. 1994), rev'd on other grounds, 514 U.S. 499 (1995). The record indicates, and petitioner does not challenge, that the BPT afforded petitioner and his counsel an opportunity to speak at the hearing, gave them time to review petitioner's central file, allowed them to present relevant documents, and provided them with a reasoned decision in denying parole.

Petitioner alleges that the board's determination of parole unsuitability lacked "some evidence" necessary to support the decision and to satisfy due process. This claim is without merit. A review of the relevant factors relied upon by the board, and as they were explained to petitioner, reveal that there was "some evidence" to support the parole denial.

a. Commitment Offense and Pre-Offense Behavior

The BPT's decision on March 15, 2004 cited the nature and circumstances of petitioner's crime, as well as his prior criminal history, as evidence for denying parole. In committing his murder offense, petitioner and four friends randomly targeted the victim, believing him to be white, and beat him with their fists and broken beer bottles. At some point during the attack, a 14-year-old member of petitioner's group stabbed the victim in the heart with his knife. Even after the stabbing, petitioner continued to beat the victim as he fell to the ground. Given these circumstances, the board concluded that "[t]he offense was carried out in an exceptionally cruel, callous, violent and brutal manner. The victim was abused. He was beaten, stabbed, and then beaten some more. The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering and life, and the motive for the crime was inexplicable." March 15, 2004 Hr'g Tr. at 86 (Resp't Ex B). Under California law, all these factors may be considered as "circumstances tending to show unsuitability." Cal.

6

1  Code Regs. tit. 15, § 2402(c)(1)(A)-(E).

2         The board also considered petitioner's criminal record prior to

3  incarceration, in particular focusing on his "escalating pattern of criminal

4  conduct."  Petitioner had a prior conviction for battery, was charged with

5  loitering on school grounds after he "got in a fight," and had been on continuous

6  probation with repeated probationary violations "from the time he turned 18 up to

7  and including the date of the murder."[2]

8         Petitioner contends that continued reliance on the immutable

9  circumstances of his murder offense and prior criminal record implicates his due

10  process rights, particularly "given his twenty-one (21) years of disciplinary free

11  prison performance and his on-going positive programming."  Petitioner cites

12  Biggs v. Terhune for the proposition that "continued reliance in the future on an

13  unchanging factor, the circumstance of the offense and conduct prior to

14  imprisonment, runs contrary to the rehabilitative goals espoused by the prison

15  system and could result in a due process violation."  Biggs, 334 F.3d 910, 916-17

16  (9th Cir. 2003).  Petitioner characterizes Biggs as "a case with situational factors

17  and a prison performance record analogous to [his own]." It should be noted that

18  the Biggs' court found no due process violation and upheld the prisoner's parole

19  denial based solely on the nature of the crime and conduct before incarceration.

20  Id. at 916.

21         Importantly, the Ninth Circuit recently criticized Biggs' statements as

22  improper and beyond the scope of the dispute before the court: "Under AEDPA it

23  is not our function to speculate about how future parole hearings could proceed."

24  Sass, 461 F.3d at 1129.  Sass confirmed that "evidence of [a prisoner's] prior

25

26  2 Petitioner incorrectly claims that his criminal history lacks any prior record of
   violence to constitute an unsuitability factor under California's statutory scheme.
27  See Cal. Code Regs. tit. 15, § 2402(c)(2).

28                                                7

1  offenses and the gravity of his convicted offenses constitute some evidence to

2  support the [b]oard's decision." Id.  In light of Sass, the board's consideration of

3  petitioner's conviction offense and prior criminal conduct satisfies the minimal

4  "some evidence" requirement.

5          b.  Lack of Insight and Inconclusive Psychological Evaluations

6          Even if the BPT's reliance on the nature of the murder offense and

7  previous criminal record did not satisfy the "some evidence" standard, petitioner

8  is not entitled to relief.  The board's decision was not based solely on petitioner's

9  murder offense and prior conduct.  The board focused extensively on the progress

10 of petitioner's rehabilitation and told petitioner that "our main concern, very

11 frankly, is about your ability to comprehend the crime itself."  March 15, 2004

12 Hr'g Tr. at 86 (Resp't Ex. B).

13         While petitioner's prior psychological evaluations concluded that he

14 "would probably pose a low degree of threat to the public," all these assessments

15 stressed petitioner's history with drug and alcohol addiction and the need for

16 petitioner to continue participation in Alcoholics Anonymous/Narcotics

17 Anonymous (AA/NA) programming.  See November 2003 Psychological

18 Evaluation (Resp't Ex. E) ("The major weakness in any projection to his future in

19 the free community is his drug and alcohol background....He must therefore be

20 buttressed by AA/NA support, and regular monitoring as well").  The board

21 commended petitioner for his regular participation in AA/NA since 1988, yet,

22 when asked about his advancement in these recovery programs, petitioner

23 admitted to only completing three of the twelve steps in more than 15 years.

24         The board also found petitioner's most recent psychological evaluation to

25 be "inconclusive" and expressed concern "that very possibly the last evaluation

26 didn't go into in depth into [sic] the insight of the crime, which is a major

27

28                                          8

1   question that this Panel has." March 15, 2004 Hr'g Tr. at 88 (Resp't Ex. B). In

2   particular, the board questioned inconsistencies in petitioner's version of events,

3   his reluctance to discuss the crime, his genuineness in accepting responsibility for

4   the crime, and his attempts to mitigate his involvement in the murder.  Under

5   California's parole criteria, the board may properly consider petitioner's "past

6   and present attitude toward the crime" and whether he "understands the nature

7   and magnitude of the offense." Cal. Code Regs. tit. 15, § 2402(b), (d)(3).

8        In the BPT decision, the commissioner recommended that petitioner

9   seek further "self-help and therapy programming" as well as a new psychological

10  evaluation in order to be found suitable for parole.  Petitioner's earlier

11  evaluations likewise stated that "prisoner could benefit by...taking advantage of

12  any therapy programs that may be offered by CDC." Resp't Ex. D.  Aside from

13  AA/NA and mandatory psychological evaluations, petitioner has not sought such

14  therapy.  Independent of his murder offense and prior criminality, the board's

15  conclusion that "the inmate needs additional time in order to gain insight into the

16  causation factors of the life crime" constitutes some evidence for purposes of

17  parole denial. March 15, 2004 Hr'g Tr. at 89 (Resp't Ex B).

18        c.  There was "Some Evidence" to Support BPT Decision

19        The BPT's March 15, 2004 decision to deny petitioner parole after his

20  tenth parole consideration hearing is supported by some evidence bearing some

21  indicia of reliability.  See, e.g., Rosas v. Nielsen, 428 F.3d 1229, 1232-33 (9th

22  Cir. 2005) (upholding denial of parole based on gravity of offense and psychiatric

23  reports); Morales, 16 F.3d at 1005 (upholding denial of parole based on criminal

24  history, cruel nature of offense, and need for further psychiatric treatment).

25        Petitioner contends that the Board ignored his positive prison

26  performance, supportive psychological evaluations, and drug and alcohol

27

28                                          9

1    rehabilitation in denying his parole.  The Board expressly commended petitioner

2    for his exemplary prison conduct, but concluded that "these positive aspects of

3    his behavior do not outweigh factors of unsuitability."  It is beyond the scope of

4    this court's authority to re-weigh the factors affecting parole suitability.  Powell

5    v. Gomez, 33 F.3d 39, 42 (9th Cir. 1994).

6            3.  Systematic Bias Against Granting Parole

7            Petitioner claims that his due process rights were violated as a result of the

8    board's "clear mathematical preference (bias) in favor of parole denial."

9    Petitioner presents statistical data, without providing citation or source,

10   demonstrating that parole is denied to approximately 93 to 99 percent of

11   murderers.  Even presuming this statistic to be accurate, petitioner fails to present

12   any evidentiary support for his systematic bias claim and habeas relief will not be

13   granted.

14           Petitioner erroneously contends that this rate of parole denial means that

15   the board categorizes 93 to 99 percent of murders as being "especially heinous,

16   atrocious, or cruel."  Under California's statutory categories for parole

17   determination, the board may consider the commitment offense as an

18   unsuitability factor when the murder was "especially heinous."  Cal. Code Regs.

19   tit. 15, § 2402(c)(1).  Other indicators of unsuitability include the inmate's

20   previous record of violence, unstable social history, sadistic sexual offenses,

21   psychological factors, or institutional behavior.  Id. at § 2402(c)(2)-(c)(6).  When

22   the board finds an inmate unsuitable based on these other factors, the murder

23   offense does not necessarily need to be categorized as heinous.  The focus on the

24   particular cruelty or atrociousness of the murder only arises when the

25   circumstances of the murder serve as the primary basis for parole denial.  Further,

26   given the very nature of the crime, it seems only reasonable that a high

27

28                                      10

1  percentage of murders could be described as egregious and cruel.

2       Petitioner cites the Supreme Court of California for support that "parole is

3  'normally' to be granted," In re Rosenkrantz, 29 Cal. 4th 616, 682 (2002), which

4  he misinterprets to imply that parole for convicted murderers should be granted

5  "at least 50% of the time."  This comment is completely removed from the

6  context of the case.  The Rosenkrantz court was simply asserting that a blanket

7  policy of denying parole to all murderers would violate California's parole statute

8  and potentially pose a due process violation.  Id.  The court held that, because the

9  governor afforded the inmate individualized consideration and highlighted

10  particularly egregious elements of the murder, the parole was rightfully denied.

11  Id.  More recently, the Supreme Court of California clarified that "the overriding

12  statutory concern for public safety in the individual case trumps any expectancy

13  the indeterminate life inmate may have in a term of comparative equality with

14  those served by other similar offenders."  In re Dannenberg, 34 Cal. 4th 1061,

15  1084 (2005).

16       Even if petitioner established factual support for this systematic bias

17  claim, there is no evidence in the record indicating that this bias affected the

18  board's decision or served as the basis for parole denial. To the contrary, the

19  transcript from petitioner's March 15, 2004 parole hearing demonstrates that he

20  received an individualized assessment of his potential parole suitability.

21  Petitioner's reliance on the high percentage of parole denials for life inmates

22  provides no proof of the board's systematic bias against parole.  Cf. California

23  Dept. Of Corrections v. Morales, 514 U.S. 499, 510-11 (1995) (citing that 90

24  percent of all California inmates are found unsuitable for parole as evidence that

25  deferring annual parole suitability hearings was lawful and reasonable) .

26                          **CONCLUSION**

27

28                               11

1     Petitioner is not entitled to federal habeas relief because the state courts'

2     rejection of his federal claims were not contrary to, or involved an unreasonable

3     application of, clearly established Supreme Court precedent, or were based on an

4     unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).  The board

5     supported its decision to deny parole with "some evidence" – the  murder offense

6     was cruel and callous; petitioner has a prior criminal history of violence; petitioner

7     fails to adequately comprehend the nature of consequences of his role in the

8     murder; and petitioner needs further self-help and therapy programming.  Cf. Cal.

9     Code Regs. tit. 15, § 2402(c) & (d) (listing circumstances tending to show

10    unsuitability for parole and circumstances tending to show suitability).

11    Petitioner's disagreement with the board's assessment of the evidence does

12    not compel a different result.  The court is satisfied that the board gave petitioner

13    individualized consideration and that there is "some evidence" in the record to

14    support the panel's decision to deny petitioner parole after the March 15, 2004

15    subsequent hearing.

16    For the foregoing reasons, the petition for a writ of habeas corpus is

17    DENIED.

18    The clerk shall enter judgment in favor of respondent and close the file.

19    SO ORDERED.

20

21    DATED:  Feb. 12, 2007

22    CHARLES R. BREYER
      United States District Judge

23

24

25

26

27

28                                              12